COMMISSIONER OF INTERNAL REVENUE v. KELHAM et al.

No. 12664.

United States Court of Appeals Ninth Circuit.

Nov. 5, 1951.

Rehearing Denied Jan. 3, 1952.

2. See Excess Profits Tax Act of 1950, § 450(d), 1950 U.S.Code Congressional Service, p. 1157, 26 U.S.C.A. § 450(d).

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, Sp. Asst. Attys. Gen., for petitioner.

Leon De Fremery, Morrison, Hohfeld, Foerster, Shuman & Clark, San Francisco, Cal., for respondents.

Walter Slack, San Francisco, Cal., for Alma Spreckles and others.

Before HEALY and POPE, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

During the years 1938 to 1940, both Grace H. Kelham and the other respondents, who were stockholders in the J. D. and A. B. Spreckels Company,[1] received distributions therefrom. The parties stipulated how much of the distributions were to be taxed as dividends for each year, presenting the solution varying upon the answer to three questions presented to the Tax Court. Other stipulations covered other problems.

This is a review of the decision of the Tax Court upon only one of these questions.

We must determine whether the operating deficits of wholly owned subsidiaries of Spreckels as of March 1, 1913, must be restored by subsequent earnings in determining the amount of profits available for dividends for tax purposes, where the distribution to the taxpayer was received in the years 1938, 1939 and 1940.

Section 115(a)(1), Internal Revenue Code, defines a taxable dividend as a distribution by a corporation out of its earnings or profits accumulated after February 28, 1913.[2] Section 115(b) provides also that earnings and profits accumulated before March 1, 1913, may be distributed tax-free after the earnings and profits accumulated after that date have been distributed.[3]

The language of the statute appears plain. Gross income covers "gains or profits and income derived from any source whatever."[4] Specifically, "any distribution made by a

1. Hereinafter called "Spreckels".

2. 26 U.S.C.A. § 115(a) (1).

3. 26 U.S.C.A. § 115(b).

4. 26 U.S.C.A. § 22(a).

corporation to its shareholders \* \* \* out of its earnings or profits accumulated after February 28, 1913," is taxed. An interpretation of such words in accordance with common definition compels us to hold these sums paid over to the respondents were taxable as the Commissioner contends.

The decision might well stop here, but the able opinion of the Tax Court should not be treated in such cavalier fashion. No other court[5] has had this question squarely presented, and the matter should be carefully reviewed.

██ The mere fact that, as a proposition of general corporation law, dividends paid in the face of an operating deficit are regarded as paid from · capital, is of no importance. For corporations organized since March 1, 1913, this is a plausible interpretation and may be applied. But here the tax on an individual who has received a distribution from a corporation thirty-five years after the critical date alone is involved. If it were shown that the identical individual was insolvent as of February 28, 1913, it would not be contended that he must have paid his past debts and be on a level of solvency before his income of the year 1938 could be taxed. Congress drew a line between February 28, 1913, and March 1, 1913. Before the passage of the Sixteenth Amendment, the Supreme Court of the United States had held that a tax could not be constitutionally levied without apportionment. Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108. After the critical date, taxation· of all sums received as income was possible. There was no tax levied upon property owned or corporate surplus from income received before the critical date. The power to tax all income after that date is incontrovertible. And the intention to burden all income after that date is beyond cavil.

██ The mere statement that, upon the critical date, the capital was impaired shows that the property was not there. It had already been practically lost. The ·law does not prevent the use of earnings to repair the loss. "Since the money here. involved as distributed to stockholders was in fact earned by the corporation since February 28, 1913, it is to be presumed that Congress, intending to use its taxing power to the fullest extent, intended to tax such funds." Dissenting opinion of Judge Disney, concurred in by Judge Arnold and Judge Opper.

The use of the word "accumulated," coupled with the words "after February 28, 1913," bear no such implications as are attributed by the Tax Court, that there can be no accumulation of earnings until an impaired capital is restored. On the contrary, these words appear to wipe out the past history and levy a tax on income earned in the future and accumulated for distribution. If the legislative body had intended such an exemption, it would have been written in clear and unambiguous language as exemptions should be, and as the exemption of "Any earnings or profits accumulated, or increase in the value of property accrued, before March 1, 1913," actually was.

██ The argument concerning the history of the changes of the statutory language, since its first enactment has but little effect either way. These changes speak with varying voices. The present statute is here construed in the light of its language and the broad purpose to tax all income. That taxpayers should escape the common burden of taxation, which falls on the just and unjust alike on in-

5. There are cited as cases dealing with the point, Hadden v. Commissioner of Internal Revenue, 2 Cir., 49 F.2d 709; Chapman v. Anderson, D.C., 11 F.Supp. 913; Helvering v. Canfield, 291 U.S. 163, 54 S.Ct. 368, 78 L.Ed. 706. The Chapman case was a holding on another point (whether the writeup on the corporate books in 1925 of the value of the corporate assets as of March 1, 1913, was sufficient to eliminate the March 1, 1913, deficit). On motion to dismiss the complaint, a single District Judge in the Southern District of New York held that it was not. Even if it were on the point here, that opinion would have little weight, since this dispute is not given consideration in that opinion, and certainly the holding there has no binding effect here.

come currently received, simply because the corporation which made the distribution from current earnings had losses over thirty-five years ago, before the Constitution permitted unapportioned taxation of income, is inconceivable.

The decision of the Tax Court is reversed.